UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
COLLATA BELGROVE,                      :
                                       :
                         Plaintiff,    :        21cv9545 (DLC)
                                       :
            -v-                        :        OPINION AND ORDER
                                       :
GREGORY ROCHE BRONNER and NELLIE ANNE  :
BRONNER nee BARNES,                    :
                                       :
                         Defendants.   :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff Collata Belgrove:
Andrew William Dwyer
The Dwyer Law Firm, L.L.C.
550 Broad Street
Suite 704
Newark, NJ 07102

For defendants Gregory Roche Bronner and Nellie Anne Bronner:
Eve I. Klein
Katelynn Mimi Gray
Duane Morris, LLP (NYC)
1540 Broadway
New York, NY 10036-4086

William Roche Bronner
W. R. Bronner, Attorney At Law
294 Vanderbilt Avenue
Brooklyn, NY 11205

DENISE COTE, District Judge:

    This action, in which the plaintiff asserts that she was

sexually harassed, was settled when the plaintiff accepted the

defendants' Rule 68 Offer of $110,000 plus prejudgment interest

and reasonable attorney's fees and costs.  The plaintiff now

seeks attorney's fees of $212,870 and costs of $10,816.53.  For
the following reasons, plaintiff is awarded $50,000 in
attorney's fees, $10,551.93 in costs, and no prejudgment
interest.

## Background

This diversity action was filed on November 17, 2021.  The
defendants, who are married, had employed the plaintiff as a
nanny for their child.  The plaintiff worked for the defendants
for approximately nine months and asserted that she was
constructively discharged after being sexually harassed.  She
principally complains that, on occasion as she walked from her
bedroom to a bathroom at night, she saw Mr. Bonner in his home-
office space at some distance away engaging in activity that she
considered inappropriate and harassing.  She brought claims
under the New York State Human Rights Law, N.Y. Exec. Law § 290,
et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C.
Admin. Code § 8-101, et seq. ("NYCHRL"), and the New York Civil
Rights Law, N.Y. Civ. Rights Law § 40-c.

From the beginning of the litigation, the actions of
plaintiff's counsel, Andrew Dwyer, required Court intervention.
On December 28, the defendants moved to strike irrelevant
allegations in the complaint that were apparently included to
embarrass the defendants and their well-to-do parents and to

create pressure for settlement.  For instance, the complaint
contained inappropriate personal details about the defendants
and their parents, extensive and irrelevant details about the
defendants' residence, and an irrelevant but embarrassing
conversation.  Before this application could be addressed, the
case was transferred to this Court on January 12, 2022.  The
defendants' motion to strike was granted in part during a
conference held on January 20.  The plaintiff was required to
file an amended complaint removing several allegations that were
irrelevant and had a significant tendency to humiliate the
defendants or unnecessarily expose their personal information.

A schedule for the litigation was also set at the
conference.  Fact discovery was to be completed by July 1, and
expert discovery by September 16.  The case was placed on the
November trial ready calendar.

During the January 20 conference, the plaintiff requested
medical records for the defendants' child, contending that they
were necessary to respond to the defendants' counterclaim for
breach of contract.  The parties were unable to resolve this
dispute even though the defendants represented that they were
not claiming that the plaintiff's actions negatively impacted
the child's health.  Following an exchange of letters to the
Court, on January 27, the Court denied the plaintiff's request

for a release of the child's medical records.  On February 8, the defendants stipulated to the dismissal of their counterclaim with prejudice.

On February 22, the defendants sought Court intervention in response to the plaintiff serving them with 252 requests for admission.  The Court ordered the plaintiff to serve no more than twenty requests for admission.  Despite being allowed to serve the twenty requests, the plaintiff never served any requests for admission.

The next dispute concerned an inspection of the defendants' residence.  The parties had agreed in January that the plaintiff could inspect the home, but plaintiff's counsel did not seek to schedule that inspection until April.  Before seeking to schedule the inspection, however, the plaintiff wrote the Court on April 4, seeking photographs and videos of the interior of the home that were in the defendants' possession.  The Court ruled on this dispute on April 8.  Ultimately, the plaintiff never inspected the home despite the defendants' January agreement that he could do so.

Also on April 8, the Court denied the plaintiff's request to discover the compensation for other childcare personnel employed by the defendants.  The Court ruled that such discovery

would only be permitted if the defendants had employed live-in caregivers.

Depositions of the three named parties were held on April 13, 21, and 28.  On May 18, a telephonic settlement conference was held before the Honorable Stewart D. Aaron.  On May 25, the defendants served the plaintiff with an offer of judgment in the amount of $110,000 plus pre-judgment interest, reasonably accrued costs, and attorney's fees.  On June 7, the plaintiff accepted the offer.  Judgment was entered on June 8.

On June 22, the plaintiff moved for attorney's fees.  The motion became fully submitted on August 27.

## Discussion

"Rule 68 offers of judgment and acceptances thereof are contracts to be interpreted according to ordinary contract principles."  Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 244 (2d Cir. 2021) (citation omitted).  "The primary goal of contract interpretation is to effectuate the intent of the parties as manifested by the language used in the contract."  Id. (citation omitted).  Here, the Rule 68 Offer of Judgment provides for a judgment in the amount of $110,000

> plus (i) any pre-judgment interest, (ii) any and all
> costs reasonably and actually accrued and documented
> by Plaintiff and/or her counsel in this action, as of
> the date of this offer, in an amount to be determined
> by the Court, and (iii) any and all attorneys' fees

reasonably and actually accrued and documented by
Plaintiff's counsel, as of the date of this offer, as
permitted by the Court, pursuant to a fee petition
submitted by counsel for Plaintiff.

The plaintiff's NYSHRL and the NYCHRL claims are brought
under "fee-shifting" statutes, each of which allows for an award
of attorney's fees to prevailing plaintiffs.  See N.Y. Exec. Law
§ 297(10); N.Y.C. Admin. Code § 8-502(g).  Defendants do not
dispute that the plaintiff is the prevailing party in this
litigation.

For attorney's fees awards under fee-shifting statutes,
courts customarily begin by calculating "the number of hours
reasonably expended on the litigation multiplied by a reasonable
hourly rate." Holick v. Cellular Sales, 48 F.4th 101, 106 (2d
Cir. 2022) (citation omitted).  To determine a reasonable
hourly rate, a court has "considerable discretion" to bear in
mind "all pertinent factors" to a reasonable rate, including
those articulated in Johnson v. Georgia Highway Express, Inc.,
488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the level of skill
> required to perform the legal service properly; (4)
> the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary
> hourly rate; (6) whether the fee is fixed or
> contingent; (7) the time limitations imposed by the
> client or the circumstances; (8) the amount involved
> in the case and the results obtained; (9) the
> experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case; (11) the

6

nature and length of the professional relationship
with the client; and (12) awards in similar cases.

<u>Lilly v. City of New York</u>, 934 F.3d 222, 228 (2d Cir. 2019)
(citation omitted).  Courts are not strictly required to
consider each of these factors, but the factors may assist in
calculating a reasonable fee.  <u>Id.</u> at 233.  Additionally, "[t]he
reasonable hourly rate is a rate a paying client would be
willing to pay."  <u>Id.</u> at 230 (citation omitted).  Accordingly, a
court "should also bear in mind that a reasonable, paying client
wishes to spend the minimum necessary to litigate the case
effectively."  <u>Id.</u> (citation omitted).  Courts may also reduce
the hourly rate of a solo practitioner "who does not operate
with the assistance of" others "for time spent on clerical tasks
or apply an across-the-board reduction . . . to account for time
spent on clerical tasks."  <u>Id.</u> at 233-34.

    "In determining the number of hours reasonably expended on
a case, a district court properly excludes documented hours that
are excessive, redundant, or otherwise unnecessary."  <u>Raja v.
Burns</u>, 43 F.4th 80, 87 (2d Cir. 2022) (citation omitted).  To
address such unnecessary entries, courts have discretion "simply
to deduct a reasonable percentage of the number of hours claimed
as a practical means of trimming fat from a fee application."
<u>Id.</u> (citation omitted).

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citation omitted). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Holick, 48 F.4th at 106 (citation omitted); see also Raja, 43 F.4th at 87-88. The determination of the degree of success obtained is made by examining "the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint." Holick, 48 F.4th at 106 (citation omitted).

After calculating the lodestar, a district court "may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Millea v. Metro-North R. Co., 658 F.3d 154, 167 (2d Cir. 2011) (citation omitted). Upward or downward adjustments from the "presumptively reasonable" lodestar figure are permissible only in "extraordinary circumstances." Lilly, 934 F.3d at 230.

If a court reduces the lodestar figure, "it must state its reasons for doing so as specifically as possible." Matsuick v.

Erie County Water Auth., 757 F.3d 31, 64 (2d Cir. 2014)
(citation omitted).  Certain considerations, such as "the
novelty and complexity of the issues, the special skill and
experience of counsel, the quality of representation, and the
results obtained from the litigation" are subsumed within the
lodestar calculation.  Lilly, 934 F.3d at 229.  "As a result, it
is inappropriate for a district court to increase or decrease
the lodestar figure on account of any of these factors."  Id.
It is, however, appropriate in extraordinary cases for the court
to reduce the lodestar fee for considerations that are not
already factored into the lodestar calculation.  Id. at 230.

Finally, the goal in awarding fees is "to do rough justice,
not to achieve auditing perfection."  Restivo v. Hessemann, 846
F.3d 547, 589 (2d Cir. 2017) (citation omitted).  As a result,
"the determination of fees should not result in a second major
litigation."  Id. (citation omitted).

Plaintiff seeks an award of attorney's fees in the amount
of $212,870.  This is based on the assertion that plaintiff's
counsel's hourly rate should be set at $700 and on time sheets
showing 304.10 hours of work spent on the action.  For various
reasons, the defendants contend that the hourly rate should be
assessed at $350 and that the total award of attorney's fees
should be $24,216.56.

Plaintiff's counsel, Andrew Dwyer, is an experienced employment discrimination attorney.  He represents that as recently as 2018 he was awarded fees in a sexual harassment case based on an hourly rate of $550.  The Court finds that an hourly rate of $600 is appropriate for those hours of compensable work in which Dwyer performed work that is customarily performed by a lead attorney.

An hourly rate of $600 is generous in this case when the relevant Johnson factors are considered.  This relatively simple employment discrimination case should not have required significant labor, did not pose challenging questions of law, and did not require a high level of skill to litigate.[1]  There were no unusual time constraints applied to the litigation, nor is there any indication that the case was an "undesirable" one for a plaintiff-side employment discrimination attorney. Plaintiff's counsel does not indicate that he was prevented from performing other valuable work due to acceptance of plaintiff's case.  Nor does he represent that any paying client has retained his services at the rate of $700 per hour or at any particular

---

[1] Dwyer explains in his reply papers the basis for his belief that the plaintiff's claims required legal research beyond that normally implicated by garden variety employment cases in New York.  The Court has considered his description of that work in arriving at the appropriate hourly rate and assessing how much time was reasonably required for that work by the level of professional that would normally undertake such work.

rate.  While the plaintiff secured a settlement, there is no
indication that the plaintiff achieved significant success,
particularly since plaintiff did not articulate a precise demand
in her complaint and had obtained replacement employment before
leaving the defendants' employ.  Thus, several of the relevant
factors weigh in favor of a lower hourly rate.

Plaintiff's counsel primarily relies on his experience and
qualifications to argue that a higher rate is appropriate, but
his reputation is far from pristine.  As the defendants note,
plaintiff has been sanctioned on multiple occasions in both New
Jersey and New York, including in this district.[2]

An analysis of the billing records reflects that roughly 80
hours of work was work that was reasonably performed by Dwyer as
an experienced attorney.  Although Dwyer performed all of the
work, the bulk of the work reflected in his billing records
would normally have been performed by an associate, a paralegal,

_____

[2] See Order at 2, Tarzy v. Dwyer, No. 18-cv-1456 (S.D.N.Y. Mar.
20, 2019), ECF No. 36 (monetary sanctions awarded for failure to
cooperate in discovery); In re Dwyer, 197 A.3d 189, 189 (N.J.
2018) (censure for gross neglect, lack of diligence, failure to
communicate adequately with client, and failure to cooperate
with disciplinary authorities); In re Dwyer, 35 N.Y.S.3d 98,
100-101 (1st Dep't 2016) (censure for gross neglect, lack of
diligence, failure to communicate adequately with client,
failure to expedite litigation, and misrepresentations to
client); In re Dwyer, 121 A.3d 876, 876 (N.J. 2015) (reprimand
for gross neglect; lack of diligence; failure to communicate
adequately with client; failure to expedite litigation; and
conduct involving dishonesty, deceit, or misrepresentation).

or a member of the support staff at much-reduced rates.  The
defendants suggest that an associate's billing rate should be
$250 per hour, and a paralegal's rate should be $150 per hour.
The plaintiff does not take issue with these hourly rate
figures, and they will be applied here.  To the extent support
staff work is identified, the Court will apply an hourly rate of
$75.

Next, not all of the work for which the plaintiff seeks an
award of fees should be included in the lodestar calculation.
The plaintiff agrees that the time spent on the requests to
admit should be subtracted.  The defendants challenge the
inclusion of many other hours of work as well.  Having
considered the parties' submissions, and having presided over
the majority of this litigation, the Court declines to
compensate plaintiff's counsel for a portion of the time spent
in drafting the complaint and for any of the time spent
litigating the motion to strike and redrafting the complaint.
Litigation should not be weaponized to coerce a settlement by
the public disclosure of sensitive irrelevant information.  In
addition, time associated with the proposed inspection of the
defendants' home -- an inspection that the plaintiff declined to
make -- will be stricken.  In addition, further reductions are
appropriate for excessive and unnecessary hours.

Applying the correct hourly rates to the tasks for which compensation is properly awarded, the resulting lodestar figure is roughly $64,750. This amount is also a more realistic lodestar calculation as it better reflects the fee that a reasonable paying client might be willing to pay to litigate this simple case and secure a judgment of $110,000.

It is appropriate to reduce this award further in light of the abusive litigation tactics in which the plaintiff engaged. This case could have been and should have been litigated on the merits. From the start of the litigation, however, plaintiff's counsel harassed the defendants and their counsel. The complaint included a notable amount of inappropriate personal details about the defendants, their parents, and their innocent child. These materials were unnecessary and tended to humiliate the defendants and could prove deeply injurious to the child. Throughout discovery, plaintiff's counsel failed to cooperate professionally with defense counsel. He submitted a staggering 252 requests for admission, requested discovery of the medical records of the defendants' child despite those records being irrelevant, and engaged in an unwarranted back-and-forth regarding photographs and video of the defendants' home. The award of fees will therefore be further reduced to $50,000.

13

Next, the plaintiff seeks $10,816.53 in costs.  These costs represent postage, delivery, and filing fees; fees for videography of depositions; fees for deposition and conference transcripts; parking fees; and copying fees.  The defendants object to the charges for video depositions, certain transcript charges, the copying charges, and one shipping charge.  An award of costs in the fee-shifting statute context "normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Fisher v. SD Prot., Inc., 948 F.3d 593, 600 (2d Cir. 2020).  As with fee awards, the fee applicant "must submit adequate documentation" supporting the request for costs.  Id.

Here, most of the costs requested are reasonable and will be awarded.  The costs relating to expedited transcripts and deposition videos are common costs incurred to assist counsel in litigating a case effectively.  There is no indication that the fees for these services are inappropriately high.  Likewise, the shipping cost objected to by defendants is not unreasonable.

The only inappropriately inflated costs are the photocopying charges.  Dwyer has failed to submit any documentation regarding the two photocopying charges of $506.55 and $22.65.  Dwyer does not explain why he required over 3,500 photocopies, nor does he articulate the basis for the charge per

14

copy.  Accordingly, it is appropriate to reduce the photocopying charges by half.  This reduction yields a total amount in costs of $10,551.93.

Finally, the Rule 68 offer of judgment accepted by plaintiff provides for prejudgment interest in an amount to be determined by the Court.  Courts in this circuit often award prejudgment interest when a damages award in an employment discrimination case reflects front or back pay to make the plaintiff whole.  See, e.g., Santiago v. Crown Heights Ctr. for Nursing & Rehab., No. 15cv4381, 2017 WL 9482107, at *24 (E.D.N.Y. Feb. 24, 2017); Chisholm v. Memorial Sloan-Kettering Cancer Ctr., 824 F. Supp. 2d 573, 580 (S.D.N.Y. 2011).  Courts regularly deny prejudgment interest, however, for mental distress or pain and suffering damages.  Shalto v. Bay of Bengal Kabob Corp., No. 12-cv-920, 2013 WL 867429, at *12 (E.D.N.Y. Feb. 6, 2013) (collecting cases).

In a letter dated June 17, 2022, plaintiff indicated that she would file a "motion for interest, fees and costs." Plaintiff filed the instant motion for fees and costs but did not offer any argument on the appropriate amount of prejudgment interest in this case.  Plaintiff has not explained a method by which to calculate prejudgment interest or the extent to which the Rule 68 Judgment reflects damages on which prejudgment

interest may be collected.  Accordingly, plaintiff has failed to show her entitlement to any prejudgment interest on the Rule 68 Judgment.

## Conclusion

Plaintiff is awarded $50,000 in attorney's fees and $10,551.93 in costs.  Plaintiff is not awarded prejudgment interest.

Dated:     New York, New York
           December 1, 2022

                                    _____
                                          DENISE COTE
                                    United States District Judge

16